**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| **JACK GREEN,** | ) |
| **Plaintiff,** | ) |
| v. | ) CIVIL ACTION NO. 5:04-1181 |
| **THOMAS McBRIDE, Warden,** | ) |
| **Mount Olive Correctional Complex,** | ) |
| **and ROBERT RHODES, Lieutenant,** | ) |
| **Defendants.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending are Defendants' Motion to Dismiss on grounds that Plaintiff failed to exhaust administrative remedies (Document No. 19.) as supplemented (Document No. 29.) and Plaintiff's Motion for Summary Judgment and Motion to Amend (Document Nos. 31 and 32.). Having conducted a thorough examination of the record, the undersigned hereby respectfully recommends that the District Court grant Defendants' Motion to Dismiss as supplemented and deny Plaintiff's Motion for Summary Judgment and Motion to Amend.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

On November 2, 2004, Plaintiff, then an inmate in the Quilliams segregation unit at Mount Olive Correction Complex, filed an Application to Proceed *in forma pauperis* and a Complaint. (Document Nos. 1 and 2.)[1] Respecting Plaintiff's submission of the claim presented in this matter through an administrative remedy process, Plaintiff indicates that he filed a "G-1, and I was told that

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

my time for filing a grievance has expired." Plaintiff states the facts underlying his claim as follows (Document No. 2, p. 4.):

> On October 19, 2003, I asked Lt. Robert Rhodes to put me on protected custody because my life was in danger because I owe a lot of money for drugs. I gave him the names of the people I owe. He told me not to tell anyone else that he would take care of it. Well he did nothing so I ended up getting a write up for refusing to go back to main line. On February 6 or 7, 2004, I cut myself and went to medical. Lt. Robert Rhodes called lock up and had two inmates brought to medical and nurse Terry Adkins checked them in to medical and I heard Lt. Robert Rhodes tell the inmates that I told on their [involvement] in drugs. Well he was going to let them get to me but Terry Adkins and another nurse Chris would not go for it so he told them to leave if they didn't want to watch so they left. The inmates and Lt. Robert Rhodes went on all day about the price and how bad they were allowed to hurt me. Well they never came to an understanding. Well in the next 4 or 5 days they were trying to get officer Cedric Foster to let them get to me. He was about to do it one day showing off in front of a nurse because she said she was bored. There was an inmate already in medical. He was the one that got the Lt. to call for the other inmate. Warden Thomas McBride was aware of this because I wrote him two letters about this, but nothing was ever said. So I gave up on getting any help from anyone here.

The undersigned finds from Plaintiff's statement that he is claiming that he informed Defendants that he felt threatened by other inmates in October, 2003, and Defendants subjected him to unsafe conditions and a risk of harm at the hands of other inmates in February, 2004. The undersigned finds that Plaintiff is therefore claiming entitlement to relief pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his right under the Eighth Amendment of the United States Constitution to be free from conditions of confinement that impose "an excessive risk to [the] inmate['s] health and safety . . . ." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed. 2d 811 (1994) (citation omitted, alteration in original).

2

On August 18, 2005, the undersigned granted Plaintiff's Application to Proceed *in forma pauperis*, and summonses were issued. (Document Nos. 12 and 13.) On August 24, 2005, Defendants filed an Answer to Plaintiff's Complaint and a Motion to Dismiss and Memorandum in Support. (Document Nos. 18 - 20.) In seeking dismissal of this case, Defendants assert that Plaintiff has not submitted the claim which he states in his Complaint through the West Virginia Division of Corrections' three step grievance procedure and has therefore failed to exhaust administrative remedies. In support of their Motion, Defendants submit the August 19, 2004, Affidavit of Charles Reynolds, Director of Classification, at Mount Olive Correctional Complex (Exhibit 1.)[2]; a copy of documents evidencing Plaintiff's record for committing prison rules violations and proceedings (Exhibit 2.); the August 22, 2005, Declaration of Kathy Dillon, institutional paralegal at Mount Olive (Exhibit 3.); the August 22, 2005, Declaration of Beverly Gandee, the Senior Inmate Grievance Coordinator of the West Virginia Division of Corrections (Exhibit 4.) Mr. Reynolds states in his August 19, 2004, Affidavit that at that time Plaintiff was confined in the Quilliams segregation unit at Mount Olive and was at level three of the prison's five level Quality of Life Program.

---

[2] Mr. Reynolds' Affidavit predates Plaintiff's filing of his Complaint in this matter and was apparently filed in *State ex rel. Green v. McBride, et al.*, Case No. 041484, in the West Virginia Supreme Court of Appeals. Plaintiff initiated that matter on August 18, 2004, and requested a Writ of *habeas corpus* on grounds that his life was being threatened by other inmates. It appear from an August, 2004, letter which Plaintiff sent to the Clerk of the West Virginia Supreme Court of Appeals, a copy of which is attached to Mr. Reynolds Affidavit, that Plaintiff made the same claim in that Court that he does in this case. Plaintiff stated as follows in that letter:

> My problem is the same Lieutenant told people that I told on. Now I know that if I go back to mainline, they will hurt me real bad or kill me. This Lieutenant has already tried to set me up for them in medical.

The West Virginia Supreme Court of Appeals refused Plaintiff's Petition at a Writ Conference on November 30, 2004.

Mr. Reynolds states that Plaintiff could not return to the prison's general population until he completed level five of the program. A copy of a Violation Report in Exhibit 2 indicates that Plaintiff was notified on July 29, 2005, that he had completed level five of the Quality of Life Program and would be moved to general population. Plaintiff refused to go and was charged with refusing an order. Ms. Dillon states that as institutional paralegal at Mount Olive she prepares responses to G-2 Grievance forms for Warden McBride. She examined records of inmate grievances in October, 2003, and found none from Plaintiff respecting the circumstances stated in his Complaint. Ms. Gandee states that as Senior Inmate Grievance Coordinator, she oversees the administrative remedies procedures for the West Virginia of Corrections. She examined records in her office and concluded that Plaintiff did not exhaust administrative remedies with respect to the circumstances stated in his Complaint. Ms. Gandee attaches a copy of the Department of Corrections' Policy Directive 335.00 which specifies the administrative remedies which inmates must exhaust before proceeding with their claims in Court.

On August 25, 2005, the Court notified Plaintiff of his right to respond to Defendant's Motion to Dismiss pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Document No. 23.) On August 29, 2005, Plaintiff filed a letter stating as follows (Document No. 25.):

> They have a Declaration from a Kathy Dillon, institutional paralegal here at Mount Olive. She said that no grievance was put in October, 2003. Well she was right. The trouble with Lt. Rhodes didn't take place until February 7, 2004, and I did write the Warden two letters but never got an answer from them. I guess I didn't exhaust administrative remedies. I had 15 days from when it happened to file a G-1. Well I was on suicide watch 19 days so if I had filed, it would have been too late. They don't allow anything in the cell when you are on suicide watch.

Plaintiff filed a further response to Defendant's Motion to Dismiss on August 31, 2005. (Document No. 26.) Plaintiff states as follows:

4

> Defendants got an Affidavit from Charles Reynolds. Well Mr. Reynolds was in medical on the 9th of February, 2004, and I told him about Mr. Rhodes and about the inmates trying to get to me and he said he would check on it. Defendants also have the Affidavit from Kathy Dillon and from Beverly Gandee. But I don't see any Affidavit from the people that was working in medical like Terry Adkins the nurse that Mr. Rhodes got to check the inmates into medical or officer Cedric Foster or another nurse named Chris. All the nurses in medical at that time knew about it, so why not get their Affidavits also.

On February 13, 2007, Defendants submitted a Supplement to Motion to Dismiss. (Document No. 29.) Defendants refer to the recent decision of the United States Supreme Court in Jones v. Bock, __ U.S. __, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), and submit the February 12, 2007, Declaration of Charlene Sotak, the Division of Corrections' Inmate Grievance Coordinator. Ms. Sotak states that she oversees the administrative remedy procedures for the Division of Corrections and examined the Division's central office file for evidence of Plaintiff's attempts to exhaust administrative remedies respecting the claims he makes in this case. Ms. Sotak attaches copies of documents which she found in her search. The documents indicate that Plaintiff exhausted administrative remedies respecting complaints about his medical treatment at Mount Olive in August and September, 2003. There is no indication in the documents that Plaintiff submitted his claim as posed in this case that Defendants deliberately subjected him to unsafe conditions and a risk of harm at the hands of other inmates through the Division of Corrections' administrative remedy process.

On May 22, 2007, Plaintiff filed a Factual Affidavit. (Document No. 30.) Plaintiff states circumstances pertaining to his medical treatment at Mount Olive and attaches a copy of grievance forms and documents. The Court finds that these documents do not pertain to the claim which he made initially in this case that Defendants subjected him to unsafe conditions of confinement.

On May 30, 2007, Plaintiff filed a Motion for Summary Judgment. (Document No. 31.) Plaintiff contends in seeking summary judgment that "[d]angerous conditions as shown, com[bined]

5

with denial of needed medical does violate the Eighth Amendment. The act further violates the Fourteenth Amendment [right] to equal protection." Plaintiff attaches copies of grievance forms and documents none of which pertain to his original claim in this matter.

On June 12, 2007, Plaintiff requested to amend his Complaint stating that "I have a few things I would like to add . . .." (Document No. 32.)[3]

## DISCUSSION

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, ___ U.S. ___, 126 S.Ct. 2378, 2382 - 2383, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 922, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision

---

[3] The undersigned notes that on June 6, 2007, Plaintiff filed an Application to Proceed without Prepayment of Fees or Costs and a Complaint which the Court designated *Green v. Rubenstein, et al.*, Civil Action No. 5:07-0363. In that matter, Plaintiff alleges entitlement to relief pursuant to 42 U.S.C. § 1983 for Defendants' deliberate indifference to his serious medical/dental needs.

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

for monetary relief."). The Fourth Circuit has determined that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

"[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.) If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, ___ U.S. ___, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), Court's Syllabus (c)("The

PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

Proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted). The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment, other than appeals of disciplinary and confinement matters. Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit

Manager. The Unit Manager must respond to the inmate's Grievance within five business days. If the Unit Manager's response is unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. Should the Unit Manager fail to respond within the five day period of time, the inmate may immediately file a G-2 Grievance Form utilizing the G-1 Grievance Form copy. The Warden/Administrator must respond to the appeal, in writing, within five working days. If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. If the Warden/Administrator's response is unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. Furthermore, if the Warden/Administrator fails to respond within the five day period of time, the inmate may submit his appeal to the Commissioner/designee within five working days of the lapsed response time. The Commissioner must respond to the appeal within ten working days. The administrative process is exhausted when the Commissioner responds to the inmate's final appeal.

     Plaintiff complains that he informed Mr. Rhodes in October, 2003, that he needed protection from other inmates at Mount Olive to whom he was indebted for drugs. Plaintiff further states that in February, 2004, he was placed in the prison's medical unit, and Mr. Rhodes arranged for inmates from whom Plaintiff sought protection to be there and encouraged them to hurt Plaintiff. Thus, Plaintiff indicates that Mr. Rhodes deliberately created circumstances which endangered Plaintiff. Ms. Dillon, Ms. Gandee and Ms. Sotak examined their records for evidence of Plaintiff's complaints and found nothing indicating that Plaintiff exhausted administrative remedies respecting his claim in this case that Defendants deliberately subjected him to dangerous conditions. Rather, it is evident that Plaintiff submitted claims respecting his medical treatment through the administrative remedy

process then.[5] By his letter of August 29, 2005, Plaintiff appears to concede that he did not exhaust administrative remedies as to his claim in this matter. (Document No. 25.) Plaintiff has offered no evidence to suggest that he completed the administrative remedies process respecting his claim. The undersigned finds from the record that Plaintiff did not submit the claim which he raises in this matter completely through the West Virginia Division of Corrections' Policy Directive 335.00 grievance procedure. Plaintiff therefore failed to exhaust administrative remedies. For this reason, this matters must be dismissed.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss (Document No. 19.) as supplemented (Document No. 29.), **DENY** Plaintiff's Motion for Summary Judgment and Motion to Amend (Document Nos. 31 and 32.) and

---

[5] Though it appears from documents attached to Ms. Sotak's Declaration (Document No. 29.) and documents which Plaintiff submitted along with his Factual Affidavit (Document No. 30.) that Plaintiff exhausted administrative remedies respecting complaints about his medical treatment in September, 2003, Plaintiff did not complain about his medical treatment in his Complaint in this matter. The first evidence respecting Plaintiff's complaints about his medical treatment in 2003 was introduced into the record on February 13, 2007, with Defendants' Supplement and Ms. Sotak's Declaration (Document No. 29.) In his Motion for Summary Judgment filed on May 30, 2007, Plaintiff states that "[d]angerous conditions as shown, com[bined] with denial of needed medical does violate the Eighth Amendment." (Document No. 31.) Plaintiff then requested to amend his Complaint on June 12, 2007. (Document No. 32.) Presumably, Plaintiff wishes to include a claim that Defendants failed to attend to his significant medical needs. The Defendants' introduction of documents into the record does not effectively constitute an amendment of these proceedings to include the subject matter of the documents, and Plaintiff did not request amendment of these proceedings to include a claim respecting his medical treatment while he was within the applicable period of limitations (within two years after he became entitled to proceed on those claims). The undersigned further finds that an amendment to include Plaintiff's claims respecting his medical treatment will not relate back to the date of his initiation of this action under Federal Rule of Civil Procedure 15(c) because his medical treatment claim arises out of distinctly different circumstances than those presented in his original complaint.

remove them from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Johnston and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*, and counsel of record.

Date: June 14, 2007.

R. Clarke VanDervort
United States Magistrate Judge