IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JACK GREEN,

           Plaintiff,

v.                                                                                    CIVIL ACTION NO.  5:04-cv-01181

THOMAS MCBRIDE, et al.,

           Defendants.

**MEMORANDUM OPINION**

This action arises out of an incident that occurred in February 2004 where Plaintiff alleges that Defendants subjected him to unsafe prison conditions and a risk of harm at the hands of other inmates in violation of his eighth amendment right to be free from conditions of confinement that impose "an excessive risk to [the] inmate['s] health and safety . . . ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

By Standing Order entered on July 21, 2004, and filed in this case on November 2, 2004, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation (PF&R).  Magistrate Judge VanDervort filed his PF&R on June 14, 2007 [Docket 33].  In that filing, the magistrate judge recommended that this Court grant Defendants' motion to dismiss [Docket 19] as supplemented [Docket 29], deny Plaintiff's motion for summary judgment and motion to amend [Docket 31 and Docket 32], and remove this matter from the Court's docket.

The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Here, objections to Magistrate Judge VanDervort's PF&R were due by June 29, 2007, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). An objection was docketed in this case on June 19, 2007 [Docket 34],[1] and Plaintiff filed a letter with the Court on July 12, 2007 [Docket 35].

In what has been docketed as an objection to the PF&R, Plaintiff states that he objects to the magistrate judge's finding that he failed to exhaust his administrative remedies in his civil action 5:07-cv-00363 because he attached the proper forms as exhibits to that complaint. He further states in the post-script that he filed a level one grievance (G-1) in this case, 5:04-cv-01181. He does not object, however, to the magistrate judge's finding that he did not follow the appropriate three-step procedure mandated by the West Virginia Division of Corrections' Policy Directive 335.00 and consequently failed to exhaust his administrative remedies with respect to this action. Further, he provides no explanation as to why his September 18, 2004 G-1 was filed several months after he was released from "suicide watch." (*See* Docket 34 at 2.) Therefore, because Plaintiff's objection was directed toward his more recent case, 5:07-cv-00363, and because Plaintiff has failed to direct the

---

[1] This document was also filed in another case Plaintiff has pending before this Court, *Green v. Rubenstein*, 5:07-cv-00363.

Court to a specific error in the PF&R, *Orpiano*, 687 F.2d at 47, to the extent his filing can be construed as an objection to the PF&R in this case, it is **OVERRULED**.[2]

The Court will, however, address Plaintiff's statement in a letter filed with the Court on August 29, 2005, where he states that he was unable to exhaust his administrative remedies in February of 2004 because he was on suicide watch for nineteen days, making any attempt to file his G-1 untimely. (*See* Docket 25 at 1.)

In order to prevail on their affirmative defense of failure to exhaust administrative remedies, Defendants must show that Plaintiff failed to exhaust all the administrative remedies that were "available" to him. *See* 42 U.S.C. § 1997e(a); *Days v. Johnson*, 322 F.3d 863 (5th Cir. 2003) (defining available as "immediately utilizable, 'and that is accessible or may be obtained: *personally obtainable*'"). Furthermore, the Supreme Court in *Woodford v. Ngo*, 126 S. Ct. 2378, 2382-84 (2006), accepted the argument "that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court[,]" and held that "proper exhaustion of administrative remedies is necessary."

Prior to the Court's holding in *Ngo*, different circuit courts articulated equitable exceptions to the requirement that an inmate must strictly abide by the applicable grievance procedures. For example, the Fifth Circuit in *Days* stated "that the exhaustion requirement 'may be subject to certain

---

[2] Plaintiff seems to have mistaken the magistrate judge's PF&R in this case to have recommended dismissal of his other case, *Green v. Rubenstein*, 5:07-cv-00363. However, without commenting on the merits of that case, neither the magistrate judge nor this Court has made any rulings in that action. Thus, any objection to a recommendation to dismiss *Green v. Rubenstein*, 5:07-cv-00363 is premature.

defenses such as waiver, estoppel, or equitable tolling.'" 322 F.3d at 866 (citation omitted).[3] Moreover, courts held that if prison officials inhibit an inmate's ability to seek administrative review, such behavior may equitably estop them from raising an exhaustion defense. *See Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004)*; see also Wright v. Hollingsworth*, 260 F.3d 357, 358 n.2 (5th Cir. 2001) ("The 42 U.S.C. § 1997e exhaustion requirement is not jurisdictional and may be subject to certain defenses such as waiver, estoppel or equitable tolling."). The Second Circuit also articulated a test for district courts to determine whether defendants could take advantage of the failure to exhaust administrative remedies defense.

> [A] three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements."

*Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004) (citations omitted).

In *Ngo*, the Supreme Court did not explicitly overrule the cases that established these equitable exceptions. *See Washington v. Tex. Dep't of Criminal Justice*, C.A. No. C-05-11, 2006

---

[3] The court in *Days* held that "administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance." 322 F.3d at 868.

U.S. Dist. LEXIS 83629, at *12 (S.D. Tex. Nov. 5, 2006) ("*Woodford* [*v. Ngo*] did not address the issue of whether these types of defenses remained available."). In fact, the majority opinion did not even address Justice Breyer's discussion in his concurrence that "on remand, the lower court should . . . consider any challenges that petitioner may have concerning whether his case falls into a traditional exception that the statute implicitly incorporates." *Ngo*, 126 S. Ct. at 2393 (Breyer, J., concurring). Because of this, district courts have continued to apply these exceptions. *See Lawyer v. Gatto*, No. 03-7577, 2007 U.S. Dist. LEXIS 15406, at *11 n.4 (S.D.N.Y. Feb. 21, 2007).

Therefore, the Court may look to cases construing these exceptions for guidance. Relevant to this case, the Second Circuit in *Williams v. Comstock*, 425 F.3d 175, 177 (2d Cir. 2005), considered these equitable principles and noted that:

> While it might be true that [plaintiff] was incapable of filing his grievance within two weeks of his stroke, [plaintiff] does not explain why he waited nearly two years to file the grievance. We therefore do not find [plaintiff's] justification persuasive. Accordingly, the failure to timely file the grievance in accordance with IGP rules amounted to a failure to exhaust administrative remedies in this case.

Given the language in *Williams*, the holding in *Days*, and the fact that district courts have continued to apply these principles despite the Supreme Court's holding in *Ngo*, this Court holds that if a prisoner cannot file a timely grievance because of an exceptional circumstance, for which he offers a persuasive justification,[4] and which in fairness and equity requires that the delay be excused, then the deadline to file that grievance should be tolled until the prisoner is able to make the filing.

---

[4] An example of such a circumstance would be prison officials preventing the prisoner from filing the grievance by placing him on suicide watch and giving him no access to his materials.

Failure to file a grievance as soon as possible establishes that the prisoner failed to properly exhaust the available administrative remedies under *Ngo*.[5]

In this case, Plaintiff was allegedly on suicide watch for nineteen days in February 2004 following the alleged incident which gave rise to this claim. Therefore, he was unable to obtain the materials necessary for him to file his G-1 within the fourteen-day grievance procedure deadline because "they don't allow anything in the cell when you are on suicide watch." (Docket 25 at 1.) Nevertheless, Plaintiff made no effort to file his G-1 until September 2004, several months after being released from suicide watch, and he gives no justification for waiting so long. Thus, although Plaintiff may have been unable to file his G-1 within the requisite time period set forth by the grievance procedure, he needed to do so as soon as he was released from suicide watch in order to

---

[5] The prisoner should not simply be able to forgo the grievance procedure entirely because special circumstances or a persuasive justification existed. The inmate must make a concerted effort to substantially comply with the grievance procedures for the policy reasons discussed in *Ngo*. 126 S. Ct. at 2385. These reasons are:

> First, exhaustion protects "administrative agency authority." Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures." Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." Because of the advantages of administrative review, some aggrieved parties will voluntarily exhaust all avenues of administrative review before resorting to federal court, and for these parties an exhaustion requirement is obviously unnecessary. Statutes requiring exhaustion serve a purpose when a significant number of aggrieved parties, if given the choice, would not voluntarily exhaust.

*Id.* (citations omitted).

properly exhaust his administrative remedies. *See, e.g.*, *Williams*, 425 F.3d at 177; *Irvine v. Fernald*, Civ. No. H-04-4275, 2006 U.S. Dist. LEXIS 93016, at *9 (S.D. Tex. Dec. 22, 2006). Further, Plaintiff also did not complete the three-step administrative remedies process in accord with the West Virginia Division of Corrections' Policy Directive 335.00 grievance procedure, i.e., he failed to file his level two grievance form within five days of receiving the unfavorable response to his G-1, and he failed to appeal to the Commissioner/designee of the Division of Corrections. Because he neither filed his G-1 immediately after being released from suicide watch nor completed the grievance process, the Court finds that Plaintiff did not properly exhaust the administrative remedies that were personally available to him. *See Ngo*, 126 S. Ct. at 2382. Thus, Plaintiff is unable to avail himself of the equitable exceptions mentioned in *Days* and *Williams*, regardless of whether his grievance would have been considered by officials. *See, e.g.*, *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999) ("[T]here is no futility exception to the PLRA's exhaustion requirement."). Accordingly, Plaintiff fails to state a claim upon which relief can be granted under 42 U.S.C. § 1997e.[6]

The Court also notes the filing of Plaintiff's letter on July 12, 2007 [Docket 35]. In that letter, Plaintiff asks for the Court to help him because he has been in segregation for four years and has not been able to exercise. Plaintiff's letter is based on an entirely different set of facts than those contained in his original complaint and comes nearly three years after the filing of this action and about a month after the magistrate judge entered his PF&R. Should Plaintiff wish to pursue this claim further, he should file a separate civil action. *See generally Parish v. Frazier*, 195 F.3d 761

---

[6] Importantly, the Court notes that after the PF&R was filed, Plaintiff raised no objection based on this ground and does not allege that he attempted to request an extension of time with which to file his G-1.

(5th Cir. 1999) (denying a motion to amend because of unduly delay and expanding the allegations beyond the scope of the initial complaint).  Thus, to the extent Plaintiff's letter can be construed as a motion to amend the complaint, it is **DENIED**.

Having reviewed the PF&R filed by Magistrate Judge VanDervort, the Court **ADOPTS** the findings and recommendation contained therein.  Accordingly, the Court hereby **GRANTS** Defendants' motion to dismiss [Docket 19] as supplemented [Docket 29], and **DENIES** Plaintiff's motion for summary judgment and motion to amend [Docket 31 and Docket 32].  Further, to the extent Plaintiff's July 12, 2007 letter can be construed as a motion to amend [Docket 35], it is **DENIED**.  A judgment order will be entered this day implementing the rulings contained herein.

ENTER:  September 25, 2007

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE